(No. 70753.—

MARTIN FAIER, Appellee, v. AMBROSE & CUSHING, P.C., *et al.*, Appellants.

*Opinion filed February 18, 1993.—Rehearing denied March 29, 1993.*

BILANDIC and McMORROW, JJ., took no part.
HARRISON, J., dissenting.

Michael J. Kralovec, of Feiwell, Galper & Lasky, Ltd., Richard T. Sikes, and Thomas M. Cushing, all of Chicago, for appellants.

Peter G. Bell, of Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe and Lynn D. Dowd, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Martin Faier is an attorney. He represented Recora Company, which had been sued in a patent infringement suit. He filed a counterclaim in the company's behalf. Subsequently, attorney Faier introduced the president of Recora to attorney John Ambrose. Recora then hired attorney Ambrose to handle all matters concerning the counterclaim portion of the lawsuit. Due to the failure of attorney Ambrose to comply with certain court orders, the counterclaim was dismissed.

Recora then brought suit against attorney Martin Faier and attorney John Ambrose for legal malpractice which had resulted in the dismissal of its counterclaim. Attorney Faier then filed his own counterclaim against attorney John Ambrose and Ambrose's firm, Ambrose & Cushing, P.C., for contribution pursuant to the Contribu-

tion Act (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*) and also for common law indemnity.

Attorney Faier then settled the entire malpractice claim which Recora had filed and Recora released all claims against Faier and Ambrose. Ambrose did not participate in the settlement agreement between Faier and Recora. Faier alleges that by settling with Recora he paid more than his *pro rata* share of his liability, and that his liability to Recora is wholly vicarious, arising out of the acts and omissions of Ambrose. Ambrose's motion to dismiss Faier's counterclaim for contribution and indemnity was denied, but the trial court indicated *sua sponte* that it would certify the following two issues for permissive interlocutory appeal pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)). The appellate court denied leave to appeal these questions, but this court allowed the petition for leave to appeal.

> "i. Whether a defendant-attorney, who has settled the entire claim of a plaintiff in a legal malpractice/professional negligence case, arising out of the dismissal of a federal antitrust counterclaim, has a right of contribution under the Illinois Contribution Act against a released nonsettling defendant-attorney, when the damages sought by the counter-plaintiff in the antitrust case were the following: lost profits, increased expenses, including attorney's fees, and treble damages?
>
> ii. Whether a defendant-attorney, who has settled the entire claim of a plaintiff in a legal malpractice/professional negligence case, arising out of the dismissal of a federal antitrust counterclaim, may maintain a claim for implied indemnity against a released not-settling defendant-attorney?"

Our answer to both questions is yes.

Two recent decisions are directly on point. In *Collins v. Reynard* (1992), 154 Ill. 2d 48, we recently pointed out that a claim of legal malpractice resulting in purely economic damages may be couched in either contract or

tort and that recovery may be sought in the alternative. The Contribution Act is grounded in tort. Thus, under the rationale set forth in *Collins*, a cause of action may be brought against an attorney for contribution.

In *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center* (1992), 154 Ill. 2d 347, we determined that common law implied indemnity, stemming from vicarious liability, was not abolished by the Contribution Act. Thus, a claim against an attorney for recovery of a settlement may be based upon implied indemnity.

This cause is remanded to the circuit court for further proceedings consistent with the views herein expressed.

*Certified question answered;*
*cause remanded.*

JUSTICES BILANDIC and McMORROW took no part in the consideration or decision of this case.

JUSTICE HARRISON, dissenting:

The majority treats this matter as though it were a proceeding under Supreme Court Rule 20 (134 Ill. 2d R. 20). That rule provides that when the Supreme Court of the United States or the United States Court of Appeals for the Seventh Circuit has pending before it a case involving a question of State law which may be determinative and there are no controlling precedents in the decisions of this court, it may certify the question to us for instruction. Where we decide to take up such a certified question, Rule 20 calls for us to respond by issuing an answer, as the court has done here.

The problem is that this is not a Rule 20 proceeding. It is a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). The function of these two rules is wholly different. To properly under-

stand Rule 20, one must recall that under the Rules of Decision Act (28 U.S.C. §1652 (1964)), State law supplies the rule of decision in civil actions in Federal court in cases where it applies. State law includes judicial decisions. (*Erie R.R. Co. v. Tompkins* (1938), 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817.) Where a question of State law has not been addressed by the highest court of a State or by that State's intermediate appellate courts, the Federal courts must forecast what the State's highest court would hold if presented with the issue. (*Wilson v. Ford Motor Co.* (4th Cir. 1981), 656 F.2d 960.) Rule 20 is simply a mechanism our court has adopted to help take the guesswork out of this endeavor.

Because we have no authority over the disposition of matters pending in the Federal courts, our job in a Rule 20 proceeding is necessarily confined to answering the question as certified. By contrast, a permissive interlocutory appeal under Rule 308 is, as its name implies, a true appeal, the specific purpose of which is to furnish an extraordinary mechanism for litigants in a State court proceeding to obtain review of "interlocutory orders not otherwise appealable." As in all appeals, we are empowered to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." (134 Ill. 2d R. 366(a)(5).) Accordingly, where we have allowed a Rule 308 appeal, our obligation is not merely to pass on the question of law involved, but to consider the propriety of the underlying order. *Faulkner-King v. Wicks* (1992), 226 Ill. App. 3d 962, 973; *Schoonover v. American Family Insurance Co.* (1991), 214 Ill. App. 3d 33, 39-41.

One should not confuse Rule 308 with Rule 20 because of its requirement that the trial judge make a written finding that the interlocutory order at issue involves "a question of law as to which there is substantial

ground for difference of opinion." (134 Ill. 2d R. 308.) This requirement is not meant to limit the scope of review. Its purpose is merely to indicate whether the appeal from the interlocutory order involves a sufficiently important question to warrant such unusual review at such an early stage of the proceedings. (*Schoonover*, 214 Ill. App. 3d at 39.) If this court had intended otherwise, if it had meant for Rule 308 to involve nothing more than "answering" a certified question, it could easily have accomplished this by adopting the same language used in Rule 20. Significantly, it did not do so. Unlike the majority, I cannot overlook this distinction.

I note, moreover, that Rule 308 is derived from 28 U.S.C. §1292(b) (1964). (See 134 Ill. 2d R. 308, Committee Comments, at 264.) The key language of the two provisions is, in fact, nearly identical. In applying section 1292(b), the Federal courts have never interpreted the statute as limiting the appeal to the questions identified. Instead, they have stated that the reviewing court is free to consider " 'such questions as are basic to and underlie the order supporting the appeal' " (*In re Oil Spill by "Amoco Cadiz" Off the Coast of France March 16, 1978* (7th Cir. 1981), 659 F.2d 789, 793 n.5, quoting *Helene Curtis Industries v. Church & Dwight* (7th Cir. 1977), 560 F.2d 1325, 1335) and that it can "consider all grounds which might require a reversal of the order appealed from" (*Merican, Inc. v. Caterpillar Tractor Co.* (3d Cir. 1983), 713 F.2d 958, 962 n.7).

Further supporting this approach is that Rule 308 is intended to facilitate "the ultimate termination of the litigation." I fail to see how this function can be properly served if we limit our inquiry to the issues as framed by the trial court. If the trial court's formulation were binding, it is easy to contemplate a situation where its order would have to be reversed on interlocutory appeal because its analysis of the case was defective, even though

the result it reached would ultimately have to be sustained as correct on appeal following entry of final judgment. In such a situation, the interlocutory appeal, rather than speeding resolution of the case, would simply have protracted it and protracted it needlessly. As Justice Green correctly observed in *Schoonover v. American Family Insurance Co.* (1991), 214 Ill. App. 3d 33, 40-41, once an appeal has been allowed under Rule 308, "no judicial economy results from limiting consideration to the questions identified when the propriety of the order on appeal can be determined once and for all by considering all issues properly raised below."

Having reached this conclusion, I believe we should proceed to consider whether the trial court correctly denied Ambrose's motion to dismiss Faier's counterclaim for contribution and implied indemnity. For the reasons stated by the majority, I would affirm the trial court's order insofar as it refused to dismiss that part of Faier's counterclaim seeking contribution. I would, however, reverse that order insofar as it refused to dismiss that part of Faier's counterclaim for implied indemnity.

In *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center* (1992), 154 Ill. 2d 347, this court did hold that common law implied indemnity was not abolished by the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) "in the quasi-contractual context." In this case, however, there is nothing to suggest that a quasi-contractual relationship existed between Faier and Ambrose. As the majority itself recognizes, it was Recora and not Faier who hired Ambrose. No allegation has been made that any monies passed between Faier and Ambrose or that Faier had any control over the services Ambrose performed on Recora's behalf.

For the foregoing reasons, I would affirm in part, reverse in part, and remand for further proceedings.